IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| S.R., by and through his next friends M.R., N.R. and P.R., | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | |
| EL CAMPO INDEPENDENT SCHOOL | § | |
| DISTRICT;  MARK POOL in his official | § | |
| capacity as Superintendent of El Campo | § | |
| Independent School District; JUDY | § | |
| WALIGURA in her official capacity as | § | |
| President of the Board of Trustees for the El | § | |
| Campo Independent School District; | § | |
| THOMAS TURNER in his official capacity | § | |
| as Vice President of the Board of Trustees for | § | |
| the El Campo Independent School District; | § | |
| LAKETA JO DENNIS in her official | § | CIVIL ACTION NO. 4:08-cv-03263 |
| capacity as Secretary of the Board of | § | |
| Trustees for the El Campo Independent | § | |
| School District; CECIL DAVIS in his official | § | JURY DEMANDED |
| capacity as a Member of the Board of | § | |
| Trustees for the El Campo Independent | § | |
| School District; MELISSA KAINER | § | |
| ERWIN in her official capacity as a Member | § | |
| of the Board of Trustees for the El Campo | § | |
| Independent School District; DAVID | § | |
| HODGES in his official capacity as a | § | |
| Member of the Board of Trustees for the El | § | |
| Campo Independent School District; RALPH | § | |
| NOVOSAD in his official capacity as a | § | |
| Member of the Board of Trustees for the El | § | |
| Campo Independent School District; KIM | § | |
| CHILES individually and in her former | § | |
| official capacity as Principal at Northside | § | |
| Elementary School in the El Campo | § | |
| Independent School District; JACKIE | § | |
| CONDRA individually and in her official | § | |
| capacity as an Autism Specialist and teacher | § | |
| at Northside Elementary School in the El | § | |
| Campo Independent School District; | § | |
| REBECCA CROWELL individually and in | § | |
| her official capacity as a teacher at Northside | § | |

Elementary School in the El Campo                    §
Independent School District; DAN                     §
HAMMOCK individually and in his official             §
capacity as Director of Special Education for        §
the El Campo Independent School District;            §
MARY JACKSON individually and in her                 §
official capacity as a teacher's aide at             §
Northside Elementary School in the El                §
Campo Independent School District; JACKIE            §
JOSEPH individually and in her official              §
capacity as a teacher's aide at Northside            §
Elementary School in the El Campo                    §
Independent School District; CINDY                   §
MAREK individually and in her former                 §
official capacity as a teacher's aide at             §
Northside Elementary School in the El                §
Campo Independent School District;                   §
ALFRED PAVLU individually and in his                 §
official capacity as a Physical Education            §
teacher at Northside Elementary School in            §
the El Campo Independent School District;            §
MARY JEAN SKOW individually and in her               §
official capacity as an employee at Northside        §
Elementary School in the El Campo                    §
Independent School District; KATE                    §
TESTON individually and in her official              §
capacity as a teacher at Northside Elementary        §
in the El Campo Independent School District;         §
ANGELA WENGLAR individually and in                   §
her official capacity as a teacher at Northside      §
Elementary School in the El Campo                    §
Independent School District; and                     §
RAYMOND WILSHER individually and in                  §
his official capacity as Vice Principal at           §
Northside Elementary School in the El                §
Campo Independent School District,                   §
                                                     §
         Defendants.                                 §


**PLAINTIFF'S RESPONSE TO DEFENDANTS' 12(b)(6) MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

**TABLE OF CONTENTS**

I.      STATEMENT OF NATURE AND STAGE OF PROCEEDING ...................................... 1

        A.      NATURE OF PROCEEDING ........................................................................ 1

        B.      STAGE OF THE PROCEEDING ................................................................... 3

II.     ISSUES TO BE DECIDED AND STANDARD OF REVIEW ....................................... 4

        A.      ISSUES TO BE DECIDED ........................................................................... 4

        B.      STANDARD OF REVIEW ........................................................................... 5

III.    SUMMARY OF ARGUMENT ..................................................................................... 5

IV.     ARGUMENT AND AUTHORITIES ............................................................................. 8

        A.      ECISD, its Superintendant, and its Board Members are not redundant parties. ................. 8

                1.      Significant case law militates against dismissing ECISD's Board Members and Superintendent. .................................................................... 8

                2.      Discovery from ECISD's Board Members and Superintendent is crucial to establishing S.R.'s § 1983 claim. .......................................................... 8

                3.      Naming the Board Members and the Superintendent ensures accountability for their action or inaction. ................................................................. 10

                4.      Maintaining the Board Members and Superintendent in the lawsuit imposes little burden for them. ...................................................................... 10

        B.      Plaintiff's Complaint States A Claim For Relief Under § 1983. ..................................... 11

                1.      Plaintiff's pleadings meet the standards articulated by the Federal Rule of Civil Procedures. .................................................................................. 11

                2.      Defendants' actions do not comport with traditional ideas of fair play and decency. ........................................................................................ 12

                3.      Courts hold that analogous conduct shocks the conscience. ............................... 13

        C.      The Individual Defendants Are Not Entitled to Qualified Immunity For Plaintiff's § 1983 Claim. ................................................................................................. 16

        D.      S.R. Has Exhausted All Applicable Administrative Remedies. ..................................... 18

                1.      Congress did not intend for the IDEA to be an exclusive remedy .......................... 18

                2.      Exhaustion is required only for those claims that seek relief available under the IDEA. ......................................................................................... 19

                3.      Defendants' citation to case law does not support further exhaustion. ................... 20

        E.      S.R.'s State Law Tort Claims Are Not Barred By The Texas Tort Claims Act. .............. 22

                1.      The Texas Tort Claims Act does not apply to state actors sued in their individual capacities. ........................................................................ 22

                2.      There is no state law exhaustion requirement applicable to the Restraining Defendants who were named in their individual capacities. ................................. 22

i

V.      CONCLUSION AND PRAYER ................................................................................................. 25

# TABLE OF AUTHORITIES

## CASES

*ABT Galveston Ltd. P'ship v. Galveston Cent. Appraisal Dist.*, 137 S.W.3d 146

    (Tex. App.—Houston [1st Dist.] 2004, no pet.) ................................................................... 28

*Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439 (5th Cir. 1999) .................................... 19

*Banco Cont'l v. Curtiss Nat'l Bank of Miami*, 406 F.2d 510 (5th Cir. 1969). ........................... 12

*Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534 (1986) .................................................... 9

*Causey v. Sewell Cadillac-Chevrolet*, 394 F.3d 285 (5th Cir. 2004) ......................................... 13

*Charlie F. v. Bd. of Educ.*, 98 F.3d 989 (7th Cir. 1996) ............................................................. 22

*Chase v. City of Portsmouth*, 428 F.Supp.2d 487 (E.D. Vir. 2006) ....................................... 8, 11

*Chauvin v. State Farm Fire & Cas. Co.*, 495 F.3d 232 (5th Cir. 2007) ....................................... 5

*Childers v. A.S.*, 909 S.W.2d 282 (Tex. App.—Fort Worth 1995, no writ) ............................... 30

*City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671 (Tex. 1979) ............................... 28

*Collins v. City of Harker Heights, Texas*, 503 U.S. 115 (1992) ........................................... 13, 15

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998) ......................................................... 14, 15

*Crighton v. Schuylkill County*, 882 F.Supp. 411 (E.D. Pa. 1995). .......................................... 8, 9

*Deer Creek Ltd. v. North Am. Mortgage Co.*, 792 S.W.2d 198 (Tex. App.—Dallas 1990, no writ) .......... 28

*Doe v. S&S Consol. I.S.D.*, 149 F.Supp.2d 274 (E.D. Tex. 2001) ............................................ 15

*Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443 (5th Cir. 1994) ................................................... 20

*Eddins v. Excelsior ISD*, Civil Action No. 9:96-CV-10, 1997 WL 470353 (ED Tex. Aug. 6, 1997) .. 23, 24

*Gen. Elec. Cap. Corp. v. Posey*, 415 F.3d 391 (5th Cir. 2005) ................................................... 5

*Honig v. Doe*, 484 U.S. 305 (1988) .......................................................................................... 23

*Ingraham v. Wright*, 430 U.S. 651 (1977). ............................................................................... 14

*Jefferson v. Yseleta Ind. School Dist.*, 817 F.2d 303 (5th Cir. 1987) ................................... 17, 18

*Jeremy H. v. Mt. Lebanon School Dist.*, 95 F.3d 272 (3rd Cir. 1996) ....................................... 26

*Kentucky v. Graham*, 473 U.S. 159 (1985). ..................................................................................... 8

*Mapp v. William Penn School Dist.*, No. 99-4440, 2000 WL 1358484 (E.D. Pa. Sept. 18, 2000) ............ 25

*McCormick v. Waukegan Sch. Dist. # 60*, 374 F.3d 564 (7th Cir. 2004) .................................................. 22

*McLellan v. Miss. Power & Light Co.*, 526 F.2d 870 (5th Cir. 1976). ........................................................ 3

*Mission Consolidated Independent School Dist. v. Garcia*, 253 S.W.3d 653 (Tex. 2008) ................. 26, 27

*Mrs. W. v. Tirozzi*, 832 F.2d 748 (2d Cir. 1987) ................................................................................... 21

*O.F. v. Chester Upland Sch. Dist.*, 2000 WL 424276 (E.D. Pa. 2000) ................................................... 24

*Porter v. Bd. Of Trs. Of Manhattan Beach Unified Sch. Dist.*, 307 F.3d 1064 (9th Cir. 2002) ................. 22

*Richter v. Sch. Dist. of the City of Erie*, No. 01-152 ERIE, 2002 WL 655674

    (W.D. Pa. Mar. 25, 2002) ................................................................................................. 24

*Riggan v. Midland Indep. Sch. Dist.* 86 F.Supp.2d 647 (W.D.Tex. 2000). .................................................. 9

*Rivera v. Houston Indep Sch. Dist.*, 349 F.3d 244 (5th Cir. 2003) ...................................................... 9, 10

*Roberts v. City of Corpus Christi*, 744 S.W.2d 214 (Tex. App.—Corpus Christi 1987, no writ) ............ 29

*Rochin v. People of California*, 342 U.S. 165 (1952) ............................................................................. 14

*Ronald D. v. Titusville Area Sch. Dist.*, 159 F.Supp.2d 857 (W.D. Pa. 2001) ....................................... 24

*Rourk v. Cameron Appraisal Dist.*, 131 S.W.3d 285 (Tex. App.—Corpus Christi 2004) ......................... 28

*Smith v. Robinson*, 468 U.S. 992 (1984) ............................................................................................. 21

*St. Tammany Parish Sch. Bd. v. Louisiana*, 142 F.3d 776 (5th Cir. 1998) .............................................. 11

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ............................................................................... 19

*Swilley v. Hughes*, 488 S.W.2d 64 (Tex. 1972) ................................................................................... 28

*Twyman v. Twyman*, 855 S.W.2d 619 (Tex. 1993) ............................................................................... 30

*Verona School Dist. v. Acton*, 515 U.S. 646, 115 S.Ct. 2386 (1995)...................................................... 17

*W.B. v. Matula*, 67 F.3d 484 (3rd Cir. 1995) ....................................................................................... 24

*Woodward v. Los Fresnos Independent School District*, 732 F.2d 1243, 1246 (5th Cir. 1984) ................. 18

*Youngberg v. Romeo,* 457 U.S. 307 (1982) ............................................................................. 15, 16, 17

*Zinermon v. Burch*, 494 U.S. 113 (1990) ............................................................................................. 13

iv

## STATUTES & RULES

20 U.S.C. §§ 1400 et seq. ................................................................................... 11, 21, 22

29 U.S.C. §§ 790 *et. seq.* ........................................................................................... 21

42 U.S.C. §§ 12101 *et seq.* ........................................................................................ 21

Fed. R. Civ. P. 8 ......................................................................................................... 13

Tex. Civ. Prac. & Rem. Code 102.002 ...................................................................... 30

Tex. Const. Art. III, §§ 51-52. ................................................................................... 29

TEX. EDUC. CODE § 11.151 ................................................................................... 9, 10

TEX. EDUC. CODE § 22.0514 ..................................................................................... 29

## OTHER AUTHORITIES

121 Cong. Rec. 37416, 94th Cong., 1st Sess. (Nov. 19, 1975) ................................. 23

2 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 8.04[2] at 8-24.3 (3d ed. 2005) ........................... 5

S.R., by and through his next friends, M.R., N.R. and P.R., files this Response to Defendants' 12(b)(6) Motion to Dismiss, and would respectfully show the Court as follows:

## I.     STATEMENT OF NATURE AND STAGE OF PROCEEDING

## A.     NATURE OF PROCEEDING

S.R. is a twelve year-old boy who suffers from a neurological deficit and a severe emotional disturbance.  As manifestations of his disabilities, S.R. suffers from heightened anxiety and overwhelming frustration, the exacerbation of which can lead to episodes of decompensation[1] and aggression.  Accordingly, S.R. requires a consistent environment in order to feel secure.  Despite his disabilities, S.R. navigated elementary school in a regular El Campo Independent School District ("ECISD") classroom with the assistance of a teacher's aide until fall 2006.  Then, S.R.'s aide quit, and a series of successors were hired to take her place.  This inconsistency in environment increased S.R.'s anxiety, frustration and episodes of decompensation.

Rather than heed S.R.'s qualified psychologists and psychiatrists, who explained that S.R.'s episodes of decompensation were situational and a manifestation of his disabilities, ECISD, through its Board of Trustees, hired a "behavior analyst" who had a mere two weeks training to develop an Individual Education Program ("IEP") addressing S.R.'s needs.  The behavior analyst's IEP required that S.R. be isolated in a self-contained classroom for virtually the entire school day.[2]  The IEP further required S.R.'s teacher to contrive 45 situations or "trials" each day during which she would: (1) tell S.R. "no," whether or not such a response was warranted; (2) interrupt S.R.; or (3) demand that S.R. wait, whether or not a delay was necessary.

---

[1] Decompensation is the inability to maintain defense mechanisms in response to stress, resulting in personality disturbance or psychological imbalance.

[2] ECISD intentionally disregarded repeated warnings from qualified professionals that implementation of the IEP would traumatize S.R. and exacerbate his disabilities.  *See* Am. Compl. at ¶¶ 73, 75, 90, 94, 102, 107, 108, 110.

In other words, S.R.'s teacher was to intentionally provoke 45 situations each day that would exacerbate the manifestations of S.R.'s disabilities and inexorably cause decompensation. When S.R. responded to the provocation by reacting aggressively (as would be expected by one with his disabilities), he was to be physically restrained. During the restraints, S.R.'s teacher was to continually repeat the demand-of-the-moment until S.R. complied with it.

This physically-abusive IEP resulted in S.R. being restrained more than 50 times over a matter of months. The restraints involved as many as five adults pinning S.R. down for up to an hour at a time. During the entirety of the restraints, S.R.'s teacher continually chanted the demand-of-the-moment until S.R. was physically and psychologically beaten into submission.

When Plaintiff's guardians were unable to convince ECISD to change S.R.'s IEP, they removed him from school. During the 2007-2008 school year, Plaintiff's guardians employed a retired ECISD special education aide to home-school S.R. Not once did the aide see S.R. decompensate, nor did she ever trigger a decompensation. In the fall of 2008, Plaintiff's guardians enrolled S.R. in Louise Independent School District ("LISD"). Although deference is ordinarily given to another school's education plan, the LISD Admission, Review, and Dismissal Committee (the "ARD Committee"), which includes ECISD representatives, determined that S.R. should be placed in a regular classroom and that it would not be in his best interest to continue the ECISD IEP.

S.R. has now attended school at LISD for over six (6) months and is achieving A's and B's in all of his classes except mathematics. Notably, *not once* have LISD teachers or administrators found it necessary to physically restrain S.R.

From this common nucleus of operative facts, Plaintiff asserts statutory or common law claims against entities or individuals as follows:

| ENTITY OR INDIVIDUAL | CLAIM |
|---|---|
| ECISD and Members of ECISD's Board of Trustees in their official capacities | (1) Violations of Individuals with Disabilities Act (the "IDEA")<br>(2) Violations of Section 504 ("§ 504")<br>(3) Violations of American with Disabilities Act (the "ADA") |
| All Defendants in all capacities sued | (1) Violations of 1983<br>(Bodily Integrity) |
| Restraining Defendants, in their individual capacities | (1) Negligence Per Se<br>   (a) Improper Restraint<br>   (b) Lack of Restraint Training<br>(2) Assault<br>   (a) Infliction of Bodily Injury<br>   (b) Offensive Physical Contact<br>   (c) Threat of Bodily Injury<br>(3) Intentional Infliction of Emotional Distress |

## B.  STAGE OF THE PROCEEDING

Plaintiff filed his Original Complaint on November 3, 2008.  Defendants responded by filing a Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss (the "Motion"), purportedly to narrow Plaintiff's claims.  Defendants have yet to answer Plaintiff's Complaint.   There is no Federal Rule of Civil Procedure 26(f) scheduling conference currently set in this matter.

Because a Rule 12(b)(6) motion to dismiss is not a responsive pleading, the filing of Defendants' Motion did not extinguish Plaintiff's right to amend as a matter of course. *McLellan v. Miss. Power & Light Co.*, 526 F.2d 870, 872 n.2 (5th Cir. 1976) *vacated in part on*

*other grounds*, 545 F.2d 919 (5th Cir. 1977).   Accordingly, Plaintiff filed his First Amended

Complaint (the "Amendment") on January 26, 2009, which makes moot Defendants' motion to

dismiss Plaintiff's breach of contract claim and § 1983 state-created danger claim.  Plaintiff's

response, therefore, is limited to the remaining issues raised by the Motion.

## II.     ISSUES TO BE DECIDED AND STANDARD OF REVIEW

### A.     ISSUES TO BE DECIDED

The following issues raised in the Motion remain to be decided:

- Whether Plaintiff's § 1983 claims against Members of ECISD's Board of Trustees (the "Board") and ECISD's Superintendant in their official capacities should be maintained when these Defendants are presumed to be ECISD's "final policymakers" whose actual or constructive knowledge concerning the deprivation of S.R.'s constitutional rights must be established in order to invoke liability.

- Whether Plaintiff has sufficiently pled a § 1983 substantive due process claim by alleging that Defendants: (1) intentionally provoked situations that they knew would exacerbate manifestations of S.R.'s disabilities and inevitably lead to his repeated, prolonged and violent restraint; and (2) were deliberately indifferent to S.R.'s  constitutionally protected right to bodily integrity.

- Whether Plaintiff's Complaint meets the heightened pleading standard for § 1983 claims against the Restraining Defendants in their individual capacities so as to defeat a 12(b)(6) claim of qualified immunity by describing in detail each instance in which a Restraining Defendant personally restrained S.R. with deliberate indifference to his constitutionally protected rights; and whether there was a clearly established constitutional right to bodily integrity at the time of each Restraining Defendant's conduct.

- Whether Plaintiff is required to further exhaust administrative remedies to maintain his § 1983, § 504, and ADA claims when he has fully participated in the IDEA administrative process and further exhaustion would be futile.

- Whether the Restraining Defendants, who were sued in their individual capacities,[3] enjoy immunity against Plaintiff's state law intentional tort

---

[3] Defendants imply that Plaintiff has asserted state law tort claims against the Restraining Defendants in their official capacities.  To the contrary, Plaintiff's pleadings have expressly stated that Plaintiff sues the Restraining Defendants

claims, and whether Plaintiff must further exhaust unidentified ECISD administrative remedies when recourse to such remedies would be futile.

**B.**     **STANDARD OF REVIEW**

In analyzing whether a defendant's 12(b)(6) motion to dismiss should be granted in whole or in part, a court must: "accept a plaintiff's well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Chauvin v. State Farm Fire & Cas. Co.*, 495 F.3d 232, 237 (5th Cir. 2007).   A plaintiff may plead conclusory allegations of fact or law, provided that the plaintiff's averments are short and plain and give fair notice to the defendant of the claims and the grounds alleged in support. *See Gen. Elec. Cap. Corp. v. Posey*, 415 F.3d 391, 396-97 (5th Cir. 2005) (citing at n.4 2 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 8.04[2] at 8-24.3 (3d ed. 2005), and discussing generally the fair notice requirement for pleadings).   A motion to dismiss should not be granted "unless the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Id.* at 395.

**III.     SUMMARY OF ARGUMENT**

Defendants' purported attempt to narrow the claims before the Court is little more than a stealth motion for summary judgment.   Citing case law with facts that bear no resemblance to those presented in this suit, Defendants take holdings out of context and stretch both law and credibility to the breaking point.

Defendants seek to dismiss Plaintiff's § 1983 claim against the Members of ECISD's Board of Trustees ("Board Members") and ECISD's Superintendent in their official capacities on the seemingly benign basis that these parties are redundant to the school district itself.   *See* Def. Mot. at 3-4.   Dismissal of these individually-named Defendants, however, would severely impede Plaintiff's ability to (1) identify the district's final policymaker for special

---

"in their individual capacities only and not in any capacity as a professional employee of ECISD." *See* Orig. Compl. at ¶¶ 599, 608, 617, 627, 637, 647; Am. Compl. at ¶¶ 598, 607, 616, 626, 636.

education programs, and (2) discern the extent of that policymaker's actual or constructive knowledge about the deprivation of S.R.'s constitutional rights—both crucial elements that must be established to sustain Plaintiff's § 1983 claim.  Maintaining these Defendants in the lawsuit also provides public accountability by those elected and hired to serve the best interest of students in the district.  Because these Defendants share counsel with ECISD and must remain in the lawsuit for purposes of other claims, there is little judicial economy to be gained by their dismissal.  The Motion in this regard should therefore be denied.

Relying on holdings in factually dissimilar cases, Defendants contend that Plaintiff has failed to allege government conduct that "shocks the conscience;" and therefore, has failed to state a claim under § 1983.   Case holdings, however, should not be viewed in a vacuum; but rather, should be analyzed in light of the facts upon which they were decided.  In situations factually analogous to the one that confronted S.R., courts have unequivocally found government conduct to shock the conscience and offend the constitution.   Accordingly, the Motion to dismiss as it pertains to Plaintiff's § 1983 claim cannot withstand scrutiny.

Defendants' allegation that Plaintiff has failed to plead his § 1983 claim against the Restraining Defendants in their individual capacities with sufficient particularity to withstand a 12(b)(6) dismissal under qualified immunity strains all credibility.  *See* Def. Mot. at 4-6.  Even more incredible is Defendants' assertion that S.R.'s right to bodily integrity was not clearly established when he was restrained over 50 times in a matter of a few months.  *See id.* at 7. S.R.'s right to bodily integrity was clearly established no later than 1987.  Moreover, Plaintiff's pleadings recite the details of every restraint employed by a particular Restraining Defendant, and assert that each restraint was conducted with deliberate indifference to S.R. constitutionally-protected right to bodily integrity. *See* Orig. Compl. at ¶¶ 112-462; Am. Compl. at ¶¶ 123-475.

S.R. has unequivocally met his burden even under a heightened pleading standard and has soundly defeated any Restraining Defendants' claim to qualified immunity.

Defendants' contention that S.R. has failed to exhaust his administrative remedies as to his non-IDEA federal claims is fatally flawed. *See* Def. Mot. at 8-10.  First, Plaintiff and his guardians fully participated in the administrative process as required by the IDEA to state a claim under related federal statutes. *See* Orig. Compl. at ¶¶ 51-55; Am. Compl. at ¶¶ 58-62. Second, even if S.R. had not exhausted his administrative remedies, further exhaustion would be futile.  S.R. seeks monetary damages as relief for his non-IDEA claims—relief that is unavailable under the IDEA.  Furthermore, the IDEA provides only prospective relief, making its administrative processes inapplicable to S.R. who no longer attends school in the district about which he complains.

Similarly, S.R. is not required to exhaust ECISD's administrative remedies in order to assert state law intentional tort claims against the Restraining Defendants in their individual capacities.  Texas' exhaustion requirement applies only to claims brought against government employees in their official capacities.   Plaintiff's pleadings make clear that the Restraining Defendants acted outside their official authority when they imposed restraints on S.R. that violated both ECISD policy and Texas law. *See e.g.,* Am. Compl. at ¶ 617.  The Motion as it pertains to Plaintiff's state law claims should therefore be denied.

Plaintiff has either amended his Complaint to address the Motion or responded thoroughly below.  Accordingly, S.R. respectfully requests that this Court find the Motion as it pertains to Plaintiff's breach of contract and state-created danger claims moot, and as it pertains to all other issues, lacking in merit.[4]

---

[4] To the extent that this Court finds Plaintiff's pleadings still lacking, Plaintiff respectfully requests leave to amend and cure any defects.

## IV.    ARGUMENT AND AUTHORITIES

**A.    ECISD, its Superintendant, and its Board Members are not redundant parties.**

### 1.    Significant case law militates against dismissing ECISD's Board Members and Superintendent.

As Defendants note, official-capacity suits represent "another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  Rule 12(b)(6) motions test the validity of claims, and redundancy in a pleading does not necessarily render that pleading or claim invalid.  *See Crighton v. Schuylkill County*, 882 F.Supp. 411, 415 (E.D. Pa. 1995).  Indeed "a significant amount of case law shows government officials named in their official capacities alongside the entities for which they are associated." *Chase v. City of Portsmouth*, 428 F.Supp.2d 487, 489 (E.D. Vir. 2006); *see, e.g., Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534 (1986); *Riggan v. Midland Indep. Sch. Dist*. 86 F.Supp.2d 647 (W.D.Tex. 2000).  S.R. has every right to name in its pleadings both ECISD and its policymakers, and there is no requirement imposed upon courts to dismiss purportedly redundant parties. *See Crighton*, 883 F.Supp. at 415.

### 2.    Discovery from ECISD's Board Members and Superintendent is crucial to establishing S.R.'s § 1983 claim.

S.R. named the Superintendant and each of the Board Members in his or her official capacity to obtain discovery crucial to his § 1983 claim.  Proving  a school district liable "under 42 U.S.C. § 1983 requires proof of (1) a policymaker; (2) an official policy; (3) and a violation of constitutional rights whose moving force is the policy or custom." *Rivera v. Houston Indep Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (dismissing § 1983 claim because plaintiff had failed to adduce evidence that school board members were final policymakers who had actual or constructive notice of the policy and custom about which plaintiff complained). "Whether a particular official has final policymaking authority is a question of state law." *Id.*

(emphasis in original omitted).   Texas law unequivocally delegates to school board members the "exclusive power and duty to govern and oversee the management of the public schools of the district."   TEX. EDUC. CODE § 11.151(b).    Thus, the ECISD Board Members are presumptively the final policymakers for purposes of S.R.'s § 1983 claim.

ECISD's website provides that: "[t]he Board and the Superintendent shall work together to . . . [e]stablish Districtwide policies."   *See* Posting of Powers and Duties, Board Legal Status, http://www.tasb.org/policy/pol/private/241903/pol.cfm?DisplayPage=BAA(LEGAL).pdf. This posting raises the question of whether, at the time of S.R.'s injuries, the Board was the final policymaker for the special education program—as contemplated by the Texas legislature—or whether the Board delegated all or part of that responsibility to the Superintendent.   *See Rivera*, 349 F.3d at 247 (commenting that: "TEX. EDUC. CODE § 11.151(b) does not explicitly restrict the Board's ability to delegate its power . . . .").

To identify ECISD's final policymaker, and to discern the actual or constructive knowledge attributable to that policymaker, S.R. requires discovery from selected Board Members and the Superintendent.   If ECISD's Board Members and the Superintendent are dismissed as parties, S.R.'s ability to establish the final policymaker's deliberate indifference to S.R.'s constitutional rights will be severely hampered.[5]   Accordingly, the Motion as it regards dismissal of ECISD's Board Members and Superintendent should be denied.

---

[5] To the extent that Defendants are concerned about discovery burdens that may arise, the scheduling conference should afford an opportunity to raise those concerns and for the Court to address them in a carefully crafted discovery plan.

### 3.   Naming the Board Members and the Superintendent ensures accountability for their action or inaction.

Naming the individual Board Members, all of whom are elected to their positions, holds ECISD's governing body publicly accountable for its action or inaction.   Naming the Superintendant serves the same purpose.   The Board Members' and the Superintendent's past decisions have directly affected S.R., and their future decisions will shape the course for ECISD's disabled students for years to come.   Maintaining them as named Defendants makes them accountable to those who have elected or hired them to serve the best interests of the district's students.

### 4.   Maintaining the Board Members and Superintendent in the lawsuit imposes little burden for them.

Maintaining the Board Members and the Superintendent in their official capacities for purposes of S.R.'s § 1983 claim imposes little burden on them.   *See Chase*, 428 F.Supp.2d at 490.   The Board Members cannot be entirely dismissed from the suit because they collectively constitute the local education agency (the "LEA") that is the proper party for S.R.'s IDEA claims.   20 U.S.C. § 1401(15) (A) (defining a LEA as a "public board of education or other public authority legally constituted . . . for either administrative control or direction of, or to provide a service function for, public elementary or secondary schools . . . ."); *see also St. Tammany Parish Sch. Bd. v. Louisiana*, 142 F.3d 776, 784 (5th Cir. 1998) ("[An LEA] may be held liable for the failure to provide a free appropriate public education").   There is accordingly little judicial economy to be gained from dismissing S.R.'s § 1983 claim against these Defendants.

The Board Members and the Superintendent are represented by the same counsel as ECISD.   As ECISD's policymakers, they will and should be intimately involved in the suit whether they are named parties or not.   As they have been named in their official capacities only,

they have no fear that damages will be individually assessed against them.  Because there is little

additional burden on the Board Members and the Superintendent to remain in the lawsuit, but

substantial benefit to S.R. to maintain them as named defendants, S.R. requests that this Court

deny the Motion as it pertains to dismissing the Board Members and the Superintendent as

named defendants.

**B.      Plaintiff's Complaint States A Claim For Relief Under § 1983.**

   **1.      Plaintiff's pleadings meet the standards articulated by the Federal
   Rule of Civil Procedures.**

Defendants point to factual allegations contained in one small section of

Plaintiff's Complaint and baldly assert that they are insufficient to state a § 1983 claim for

violation of S.R.'s bodily integrity.  *See* Def. Mot. at 6.  Defendants apparently ignore Plaintiff's

allegations regarding Defendants' deliberate approval of and refusal to abandon Central Texas

Autism Center's ("CTAC") IEP, which called for purposefully exacerbating S.R.'s disabilities

and violating his bodily integrity.  *See* Am. Compl. at ¶¶ 85-110.   Similarly, Defendants ignore

Plaintiff's detailed allegations regarding the intentional implementation of the IEP by the

Restraining Defendants, who violated not only Texas law, but also ECISD's own policies.  *See*

*id.* at ¶¶ 123-475.

Defendants cannot parse out the allegations in Plaintiff's Complaint to suit their

own needs.  To the contrary, Plaintiff's pleadings "must be considered in their entirety."  *See*

*Banco Cont'l v. Curtiss Nat'l Bank of Miami*, 406 F.2d 510, 512-13 (5th Cir. 1969).  Plaintiff's

pleadings also must be liberally construed, with all reasonable inferences drawn in the light most

favorable to S.R.  *See Causey v. Sewell Cadillac-Chevrolet*, 394 F.3d 285, 288 (5th Cir. 2004)

(reversing a dismissal under Rule 12(b)(6)).  It is axiomatic that the Federal Rules of Civil

Procedure require only that Plaintiff provides Defendants with fair notice of the claims asserted

against them.  *See* Fed. R. Civ. P. 8.  Taken as a whole, Plaintiff's pleadings indisputably meet the requirements of the Rules.

> ### 2.     Defendants' actions do not comport with traditional ideas of fair play and decency.

To state a § 1983 claim for violation of S.R.'s bodily integrity, Plaintiff must allege facts sufficient to implicate the substantive sphere of the Fourteenth Amendment's Due Process Clause.  *Zinermon v. Burch*, 494 U.S. 113, 124-125 (1990) (holding a plaintiff's complaint, which alleged that employees at state mental treatment facility admitted him as a voluntary patient without ascertaining whether he was mentally competent to sign admission forms, was sufficient to state a § 1983 due process claim).   The Due Process Clause is intended to prevent government officials "from abusing their power, or employing it as an instrument of oppression."  *Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 126 (1992) (citations omitted).[6]

Whether a government official's conduct is arbitrary or oppressive is determined by whether it "shocks the conscience."  *Rochin v. People of California*, 342 U.S. 165, 209 (1952) (holding that the forced pumping of a suspect's stomach shocked the conscience and violated the decencies of civilized conduct).   The conscience-shocking concept "points clearly away from liability, or clearly toward it, *only* at the ends of the tort law's spectrum of culpability."  *County of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998) (emphasis added). Certainly, "the lowest common denominator of customary tort liability" does not shock the conscience.  *Id.*  Rather, "conduct intended to injure in some way unjustifiable by any government interest is the sort of

---

6 The guarantee of due process applies to deliberate decisions of government officials to deprive a person of life, liberty, or property.  *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) (citation omitted).  It is well-established that when school officials decide to deliberately restrain a child and inflict appreciable physical pain, Fourteenth Amendment liberty interests are implicated.  *Ingraham v. Wright*, 430 U.S. 651, 674 (1977).

official action most likely to rise to the conscience shocking level." *Id.* "Whether the point of the conscience shocking is reached when injuries are produced with culpability falling within the middle range, following from more than negligence, but less than intentional conduct, such as recklessness or gross negligence is a matter for closer calls." *Id.* at 849 (internal citations omitted). Notably, the Supreme Court "has expressly recognized the possibility that some official acts in this range may be actionable under the Fourteenth Amendment." *See id.* (internal citation omitted).

### 3.   Courts hold that analogous conduct shocks the conscience.

Determining whether conduct shocks the conscience requires "an appraisal of the totality of facts in a given case." *Id.* at 850 (citation omitted). While Defendants cite several cases in support of their Motion, they fail to analyze the holdings of those cases in light of the facts that were at issue.[7]   *See* Def. Mot. at 5-6. Courts that have considered facts analogous to those presented here have routinely found that government conduct shocks the conscience and

---

[7] Defendants cite *Collins v. City of Harker Heights, Texas*, 503 U.S. 115 (1992), *County of Sacremento v. Lewis*, 523 U.S. 833 (1998), and *Doe v. S&S Consol. I.S.D.*, 149 F.Supp.2d 274 (E.D. Tex. 2001) in support of their Motion. Each case is easily distinguished from the facts presented here.

In *Collins*, the Court found that a city's failure to train or warn employees about hazards in the workplace did not violate the Due Process Clause. 503 U.S. at 115. The Court noted that such failures were "customary" and did not shock the conscience. *Id.* Here, permitting school employees who lack proper training to physically restrain a student is not customary; to the contrary, it violates Texas law. Moreover, there is a sharp difference between failing to train a party to be *aware* of danger and failing to train a party who is charged with *creating* danger.

In *Lewis*, a motorcycle passenger was killed by a high speed police chase. 523 U.S. at 835-37. In finding no violation of the passenger's substantive due process rights, the Court emphasized that the police were responding to a danger for which they were not to blame. *Id.* at 855. Here, the Defendants were not responding to danger, but *purposefully* provoking it.

In *S&S Consol. I.S.D.*, a first grade child, who had been sexually abused at home, flew into rages from time to time. In response to the rages, defendants would wrap the child in a blanket, a technique approved by the child's therapist. 149 F.Supp.2d  at 280-81. The court found that the defendants' response to the danger created by the child for herself and others did not violate the Fourteenth Amendment. While responding to a child's self-motivated physical aggression with restraint may not shock the conscience, purposefully aggravating a child's disabilities and provoking restraint is a far different cry.

offends the constitution.

In *Youngberg v. Romeo,* 457 U.S. 307 (1982), the Court held that a severely retarded person could state a § 1983 substantive due process claim if personnel at the mental institution where he was confined failed to exercise professional judgment when denying him training to self-regulate his aggressive tendencies (which had the potential to harm both himself and others), and subjected him instead to excessive restraint.  *Id.* at 319-25.

The Court found that: "liberty from bodily restraint has always been recognized as the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Id.* at 316.  The Court further noted, however, that the liberty to be free from restraint is not absolute. *Id.* at 320.  Rather, "the question is whether the extent or nature of the restraint is such as to violate due process."  *Id.*  To determine whether the plaintiff's due process rights had been violated, the Court balanced the "liberty of the individual and the demands of an organized society." *Id.*

The Court concluded that Romeo was entitled to "such training as may be reasonable in light of [his] liberty interests in safety and unreasonable restraints."  *Id.* at 322.  In determining what training was "reasonable," the Court emphasized that deference must be shown to the "judgment exercised by a *qualified* professional."  *Id.* (emphasis added).  The Court defined a "qualified professional" as a "person competent, whether by education, training or experience, to make the particular decision at issue." *Id.* at 322 n.30.  The Court further commented that: "[l]ong-term treatment decisions normally should be made by persons with degrees in medicine or nursing, or with appropriate training."  *Id.*

When a decision regarding training is made by a qualified professional, "the decision is presumptively valid; liability may be imposed only when the decision by the

14

professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* at 323.

Like the plaintiff in *Romeo*, *S*.R. was in a custodial situation when denied training to self-regulate the manifestations of his disabilities and was, instead, subjected to excessive restraint. *See Verona School Dist. v. Acton*, 515 U.S. 646, 115 S.Ct. 2386, 2392 (1995) (noting that schools have custodial and tutelary responsibility for students). It is undisputed that ECISD and its Board hired a behavior analyst who had only two weeks training to assess S.R.'s needs and thereafter spurned the opinions of qualified professionals in favor of the analyst's amateur advice. The behavioral analyst's decision to purposefully exacerbate manifestations of S.R.'s disabilities and physically restrain him certainly is not entitled to any deference under the standards articulated in *Romeo*.

Plaintiff's factual allegations are also analogous to those presented in *Jefferson v. Yseleta Ind. School Dist.*, 817 F.2d 303 (5th Cir. 1987). In *Jefferson*, a second-grade student was tied to a chair for an entire school day, and for a substantial portion of a second day, as "part of an instructional technique imposed by school policy." *Id.* at 304. In affirming denial of the defendants' 12(b)(6) motion, the Fifth Circuit commented that, "the right to be free of state-occasioned damage to a person's bodily integrity is protected by the fourteenth amendment guarantee of due process." *Id.* at 305. The Court further emphasized that, "[t]he same applies to state-occasioned restraints which are not justified by the victim's conduct or other extenuating circumstances." *Id.*

The Court additionally rejected the defendants' position that students do not have an eighth amendment right to be free from corporal punishment, commenting that even if tying

the plaintiff to a chair had been meant as a punishment, the constitution may still have been offended:

> Defendants misperceive both the pleadings and the law.   The petition asserts that [the plaintiff] was not being punished, but was the subject of an instructional technique.   As such, the holding of *Ingraham v. Wright* and its progeny are inapposite.   Further, even if this were punishment, it would not necessarily be protected conduct, for as we noted in *Woodward v. Los Fresnos Independent School District*, 732 F.2d 1243, 1246 (5th Cir. 1984), "corporal punishment is a deprivation of substantive due process when it is arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning."

*Id.* (citation omitted).   Similar to the facts presented in *Jefferson*, the Defendants in this case mandated and implemented an IEP that was designed to exacerbate the manifestations of S.R.'s disabilities and provoke his physical restraint.   *See* Am. Compl. at ¶¶ 85-110.   Purposefully agitating a fragile and impaired child into states of decompensation and provoking restraints during which he or others could be hurt, appears not only inconsistent with, but also in direct contradiction to, any legitimate state goal of maintaining an atmosphere conducive to learning.

As *Romeo* and *Jefferson* demonstrate, Plaintiff's pleadings, when taken as a whole, describes conduct that shocks the conscience.   Accordingly, S.R. has met his burden to state a cognizable § 1983 claim under the Fourteenth Amendment substantive Due Process Clause, and the Motion should be denied to the extent that it suggests otherwise.

**C.     The Individual Defendants Are Not Entitled to Qualified Immunity For Plaintiff's § 1983 Claim.**

Plaintiff's pleading unequivocally contains the factual specificity required to overcome the defense of qualified immunity.   It is undisputed that "plaintiffs suing government officials in their individual capacities must allege specific conduct giving rise to a constitutional [claim]."   *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999) (citation omitted).   "However, no heightened pleading is required in actions against individual defendants

in their official capacities . . . ." *Id.*   Rather, such a pleading need only set forth "a short and plain statement showing the pleader is entitled to relief." *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (describing a plaintiff's burden under Fed. R. Civ. P. 8).   S.R. has unequivocally met his burden to provide fair notice of his § 1983 claim to Defendants sued in their official capacities.   Indeed, Plaintiff's First Amended Complaint contains over one hundred pages of detailed allegations informing each Defendant as to the factual allegations and theories of liability supporting S.R's § 1983 claim against him or her. *See generally,* Am. Compl.

Plaintiff's pleading also meets the heightened standard applicable to its § 1983 claims asserted against the Restraining Defendants in their individual capacities.   Plaintiff alleges with specificity the dates on which each Restraining Defendant physically violated S.R. with deliberate indifference to his constitutionally protected rights. *See* Am. Compl.at ¶¶ 125-475. Plaintiff further alleges that the actions of the Restraining Defendants "deprived S.R. of his right to bodily integrity within the purview of the Fourteenth Amendment." *See id.* at ¶ 592. Plaintiff's Complaint therefore establishes the required causal connection between the Restraining Defendants' actions and the alleged constitutional violations, and Defendants' contention to the contrary strains all credibility.

Also lacking in credibility is Defendants' contention that "Plaintiffs cannot show that the Individual Defendants violated clearly established law." *See* Def. Mot. at 7.   The contours of a student's substantive due process right to be free from violations of his bodily integrity were clearly established no later than 1987. *See Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 455 (5th Cir. 1994) (citing *Jefferson*, 817 F.2d at 305).   Accordingly, the Restraining Defendants cannot hide behind qualified immunity to avoid § 1983 liability to S.R., and the

Motion, which seeks to excuse Defendants from liability based on a qualified immunity defense, should be denied.

**D.      S.R. Has Exhausted All Applicable Administrative Remedies.[8]**

        **1.      Congress did not intend for the IDEA to be an exclusive remedy.**

Congress did not intend the Individuals with Disabilities Act to be the exclusive remedy by which children with disabilities could redress harms that occur in an educational setting. Rather, the IDEA itself contemplates access to other federal statutes:

> [n]othing in this Chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 *et seq.*], title V of the Rehabilitation Act of 1973 [29 U.S.C. § 790 *et. seq.*], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws *seeking relief that is also available under this subchapter*, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. §1415(l) (emphasis added).

Congress amended the IDEA in 1986 to include the above Section 1415(l) in response to the Supreme Court's decision in *Smith v. Robinson*, 468 U.S. 992 (1984), which held that the IDEA was the exclusive statute through which a disabled child could obtain relief. Congress's stated intention in adding Section 1415(l) to the IDEA was to "reestablish statutory rights repealed by the U.S. Supreme Court in *Smith v. Robinson*" and to "reaffirm in light of this decision, the viability of Section 504, 42 U.S.C. 1983, and other statutes as separate vehicles for ensuring the rights of handicapped children." *See Mrs. W. v. Tirozzi*, 832 F.2d 748, 754-55 (2d Cir. 1987) (quoting H.R. Rep. No. 296, 99th Cong., 1st Sess. 4 (1985)). "Congress stressed that

---

[8] It is undisputed that Plaintiff has exhausted his administrative remedies under the IDEA. *See* Def. Mot. at 10. The Motion is supported only by unsubstantiated assertions of counsel that further exhaustion *may* be required for Plaintiff's other federal statutory claims. Defendants have failed to define with specificity any claim that was not raised during the IDEA process that would warrant further administrative review. The Motion, therefore, is substantively deficient and should be denied.

its original aim had been to allow resort to other judicial remedies for claims based on [the IDEA]." *See id.* (citations omitted).  Defendants' veiled attempt to limit S.R.'s claims to those stated under the IDEA, therefore, contradicts expressly stated Congressional intent.

> **2.**      **Exhaustion is required only for those claims that seek relief available under the IDEA.**

The IDEA requires exhaustion of its administrative remedies only when the relief sought is available under the IDEA.  20 U.S.C. § 1415(l).   Whether S.R. must exhaust his administrative remedies under the IDEA in order to state Section 504, ADA and § 1983 claims turns on whether he alleges any injuries that can be redressed by the IDEA's administrative procedures and remedies. *See Porter v. Bd. Of Trs. Of Manhattan Beach Unified Sch. Dist.*, 307 F.3d 1064, 1069 (9th Cir. 2002).

Here, S.R. seeks monetary damages for deprivation of his constitutional rights and for physical abuse and injuries sustained at the hands of Defendants—relief that is unavailable under the IDEA.  *See McCormick v. Waukegan Sch. Dist. # 60*, 374 F.3d 564, 568 (7th Cir. 2004) (holding that plaintiff was not required to exhaust administrative remedies because the relief requested was not "relief that was available" under the IDEA); *see also Witte v. Clark County Sch. Dist.*, 197 F.3d 1271, 1275 (1999) (holding that the IDEA does not disclose a congressional intent to provide a damage remedy); *Charlie F. v. Bd. of Educ.*, 98 F.3d 989, 991 (7th Cir. 1996) (holding "that damages are not 'relief that is available under' the IDEA"). Indeed, exhausting further administrative remedies under the IDEA would be futile because the IDEA provides only prospective relief and S.R. has no complaints about his current educational setting.  *See Honig v. Doe*, 484 U.S. 305, 327 (1988) (holding that parents need not exhaust the IDEA's administrative remedies where resort to such remedies would be futile or inadequate); *see also Witte*, 197 F.3d at 1275 (finding that the IDEA provides a "grant of jurisdiction to

19

enforce and supplement the administrative procedures for the identification, evaluation, and placement of the child, and not of authority to award retrospective damages"); *see also* 121 Cong. Rec. 37416, 94th Cong., 1st Sess. (Nov. 19, 1975) (Statement by Senator Williams, the principal author of what is now known as the IDEA, in final debate over provisions: "exhaustion . . .should not be required . . . where such exhaustion would be futile either as a legal or practical matter").   Defendants' contention that S.R. must submit to yet another administrative proceeding is therefore without merit.

### 3.    Defendants' citation to case law does not support further exhaustion.

Not a single case cited by Defendants in support of the proposition that S.R. must further exhaust administrative remedies is on point. Moreover, the cited cases are without any precedential value.

In *Eddins v. Excelsior ISD*, Civil Action No. 9:96-CV-10, 1997 WL 470353 (ED Tex. Aug. 6, 1997), a Magistrate Judge held that plaintiffs, who had exhausted their administrative remedies against one defendant school district, could not proceed with IDEA and Section 504 claims against the other defendant school districts without first exhausting the administrative remedies offered by the other schools.   *See id.* at *10.   Here, S.R. has sued ECISD only, and has unequivocally exhausted ECISD's administrative remedies.   Defendants' citation to *Eddins* as support for further exhaustion is therefore mystifying.

Similarly, in *Richter v. School Dist. of the City of Erie*, No. 01-152 ERIE, 2002 WL 655674 (W.D. Pa. Mar. 25, 2002), the court dismissed a plaintiff's claims because she had never invoked the administrative process and was seeking a change in her educational placement—relief that is available under the IDEA. *See id.* at *7.   Notably, the *Richter* court discussed several other cases in which exhaustion of administrative remedies was excused because the plaintiff had no current complaint about his or her educational placement—the

situation presented by S.R.'s claims here.  *See id.* at *4-5 (citing *W.B. v. Matula*, 67 F.3d 484 (3rd Cir. 1995), *Ronald D. v. Titusville Area Sch. Dist.*, 159 F.Supp.2d 857 (W.D. Pa. 2001), and *O.F. v. Chester Upland Sch. Dist.*, 2000 WL 424276 (E.D. Pa. 2000)).

In *Mapp v. William Penn School Dist.*, No. 99-4440, 2000 WL 1358484 (E.D. Pa. Sept. 18, 2000), a plaintiff invoked the administrative process on two occasions, but abandoned one proceeding as moot after changing schools.  *See id.* at *3.  The second due process hearing addressed only whether the plaintiff was entitled to reimbursement of transportation costs to the school from which he transferred (i.e., the old school).  *See id.*  The plaintiff later brought suit claiming under the IDEA that he was being denied a free appropriate public education by the school to which he had transferred (i.e., the new school).  *See id.*  The plaintiff also stated claims under § 1983, the ADA, and Section 504.  *See id.* at *2.  The court dismissed plaintiffs' IDEA claim for failure to exhaust administrative remedies.  *See id.* at *3.  The court also dismissed the plaintiffs other federal statutory claims, explaining that: "the Plaintiffs' complaint does not set forth facts that would lead this Court to conclude that the exceptions to the general rule of exhaustion of administrative remedies apply in this case."  *See id.*

*Mapp* is in sharp contrast to the instant case in which S.R. has fully exhausted the administrative remedies of the district in which he attended school and now expressly pleads that any further exhaustion would be futile.  *See* Am. Compl**.** at ¶¶ 58-62.

Finally, in *Jeremy H. v. Mt. Lebanon School Dist.*, 95 F.3d 272 (3rd Cir. 1996), the court found that a plaintiff *had* exhausted his administrative remedies with regard to the ADA and Section 504 by following the due process procedures mandated by the IDEA and that there was "no need to impose any further exhaustion requirement."  *Id.* at 281-282.  Thus, not a single case cited by Defendants supports a proposition that S.R.'s recourse to administrative

remedies has been deficient.  Accordingly, to the extent that Defendants seeks to impose upon Plaintiff a further exhaustion requirement, Defendants' Motion should be denied.

**E.      S.R.'s State Law Tort Claims Are Not Barred By The Texas Tort Claims Act.**

> **1.      The Texas Tort Claims Act does not apply to state actors sued in their individual capacities.**

In pure sleight of hand, Defendants seek dismissal of S.R.'s state law tort claims asserted against the Restraining Defendants *in their individual capacities only* by citing Section 101.106 of the Texas Civil Practices and Remedies Code, which requires dismissal of certain specified tort claims asserted against state actors in their *official capacities.   See* Def. Mot. at 10-11.

In *Mission Consolidated Independent School Dist. v. Garcia*, 253 S.W.3d 653 (Tex. 2008) the Texas Supreme Court makes clear that Section 101.106's election of remedies provisions apply only to tort claims asserted against a governmental unit and/or a governmental employee in his or her official capacity.  *See id.* at 657 (finding that the purpose of the 2003 revision to Section 101.106 "was to force a plaintiff to decide at the outset whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is vicariously liable").   Accordingly, Defendants' Motion to dismiss S.R.'s state law tort claims against the Restraining Defendants in their individual capacities—the only capacity in which they were sued for those causes of action—is insupportable and should be denied.

> **2.      There is no state law exhaustion requirement applicable to the Restraining Defendants who were named in their individual capacities.**

Defendants' contention that S.R. has failed to exhaust purportedly-applicable administrative remedies for purposes of his intentional tort claims against the Restraining

Defendants is also unavailing.   Defendants' contention rests precariously on Texas Education Code § 22.0514, which prohibits suits against "professional employees" of a school district unless that district's administrative remedies have been exhausted.  *See* Def. Mot. at 12-13. S.R.'s state law tort claims, however, are not now—and have never been—asserted against the Restraining Defendants in their "professional" or official capacities.  *See* Orig. Compl. at ¶¶ 599, 608, 617, 627, 637; Am. Compl at ¶¶ 598, 607, 616, 626, 636; *see also Garcia*, 253 S.W.3d at 657; To the contrary, S.R. has consistently alleged that the Restraining Defendants lacked the discretion to assault or intentionally inflict emotional distress on S.R. as a portion of, or incident to, the duties of their positions of employment with ECISD.  *See e.g.*, Orig. Compl. at ¶¶ 600, 609, 618, 628, 638, 648; Am. Compl. at ¶¶ 617, 633, 643, 654.  This is particularly true as the restraints imposed upon S.R. are prohibited by ECISD's own written policies and Texas law. *See* Am. Compl. at ¶¶ ;

Moreover, failure to exhaust administrative remedies is an affirmative defense under Texas law.  *See Rourk v. Cameron Appraisal Dist.*, 131 S.W.3d 285, 292 (Tex. App.— Corpus Christi 2004), *rev'd on other grounds*, 194 S.W.3d 501 (Tex. 2006); *ABT Galveston Ltd. P'ship v. Galveston Cent. Appraisal Dist.*, 137 S.W.3d 146, 151 (Tex. App.—Houston [1st Dist.] 2004, no pet.).  The party asserting the affirmative defense of exhaustion bears the burden of proof on all elements of the defense.  *See Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex. 1972); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979); *Deer Creek Ltd. v. North Am. Mortgage Co.*, 792 S.W.2d 198, 200 (Tex. App.—Dallas 1990, no writ).  Even a cursory review of § 22.0514 reveals that Defendants' burden cannot be not met by a conclusory allegation in a 12(b)(6) motion.  Rather, Defendants must affirmatively allege that S.R. has failed to exhaust a specific, applicable administrative requirement:

> A person may not file suit against a professional employee of a school district unless the person has exhausted the remedies *provided by the school district* for resolving the complaint.

TEX. EDUC. CODE § 22.0514 (emphasis added).   Defendants cite no particular ECISD administrative remedies that S.R. has failed to exhaust, and S.R. is unaware of any.   Should Defendants seek to pursue this fatally flawed defense, then it would be incumbent upon them to demonstrate that ECISD has adopted applicable administrative remedies, and that such remedies are intended to address intentional tort claims against an ECISD employee sued in their individual capacities.

Even if administrative remedies were applicable to S.R.'s claims, none would be required.   Exhaustion of administrative remedies is not required when such proceedings would be futile.   *See Roberts v. City of Corpus Christi*, 744 S.W.2d 214, 216 (Tex. App.—Corpus Christi 1987, no writ).   In the present case, S.R. has left the school district, making futile any administrative remedies that ECISD might offer.   Additinally, S.R. seeks monetary damages from the individual Restraining Defendants for their intentional physical and emotional abuse of him.   There is no general authority for a Texas governmental unit to assume liability for the tortious conduct of its employees.   *See e.g.,* Tex. Const. Art. III, §§ 51-52.   And, while Texas Civil Practices and Remedies Code Chapter 102 permits governmental units to pay damages arising out of specific tort claims against employees acting within the scope of their authority, § 102.002(c)(2) of that chapter expressly precludes any payments for torts arising out of "willful acts."   Tex. Civ. Prac. & Rem. Code 102.002(c)(2).   As all of the intentional tort claims that S.R. has asserted against the Restraining Defendants in their individual capacities require intent or willfulness, seeking administrative relief from ECISD would be futile.   *See, e.g., Childers v. A.S.*, 909 S.W.2d 282, 292-93 (Tex. App.—Fort Worth 1995, no writ)(assault); *Twyman v. Twyman*,

24

855 S.W.2d 619, 621 (Tex. 1993) (intentional infliction of emotional distress).  For all of these

reasons, Defendants' Motion to dismiss S.R.'s state law tort claims should be denied.

## V.       CONCLUSION AND PRAYER

S.R. has addressed every issue raised in the Motion either through Amendment or

argument above.  S.R. therefore respectfully requests that the Motion be denied in part as moot,

and in remaining part, as lacking in merit.

Respectfully submitted,

Jason M. Ryan
Attorney-in-Charge
Texas Bar No. 24033150
Southern District of Texas Bar No. 562179
RyanGlover LLP
J.P. Morgan Chase Tower
600 Travis, Suite 6750
Houston, Texas 77002
713.229.0202
832.550.2062 (fax)
jason.ryan@ryangloverllp.com

COUNSEL FOR S. R., BY AND THROUGH HIS
NEXT FRIENDS M.R., N.R. AND P.R.

OF COUNSEL:

Linda M. Glover
Texas Bar No. 24032229
Southern District of Texas Bar No. 34716
Tracey B. Cobb
Texas Bar No. 24040705
RyanGlover LLP
440 Louisiana, Suite 900
J.P. Morgan Chase Tower
600 Travis, Suite 6750
Houston, Texas 77002
713.229.0202
832.550.2062 (fax)

## Certificate of Service

I hereby certify that on this, the 26th day of January, 2009, a true and correct copy of the foregoing Plaintiff's Response to Defendants' 12(b)(6) Motion was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of the filing to the following counsel of record:

Joe A. DeLos Santos, Jr.
Walsh, Anderson, Brown, Schultze & Aldridge, P.C.
100 NE Loop 410, Ste. 100
San Antonio, TX 78216

Jason M. Ryan